## LEASE OF LAND UNDER A CITY BRIDGE.

[Circuit Court of Lucas County.]

RICARD BOILER & ENGINE CO. v. TOLEDO.

Decided, June 13, 1903.

*Municipalities—Title of, to Land—Supporting a City Bridge—Right to Lease.*

Land under a city bridge, which is owned by the city, and is used as a support for the bridge, and is not adapted to use as a street or highway, and has never been so used, can not be regarded as a public street, and the city may lease it for any purpose not inconsistent with its use as a support for the bridge.

HAYNES, J.; HULL, J., and PARKER, J., concur.

An action was brought in the Court of Common Pleas of Lucas County for the purpose of enjoining the city of Toledo from signing a certain lease or causing to be executed certain leases to certain parties of certain real estate upon Water street, it being that portion of the real estate used, in part at least, for the abutments of a bridge extending across the river at Cherry street. A motion was interposed to dissolve a temporary injunction which had ben granted, and, upon hearing, the court directed a dissolution of the injunction. Thereupon the parties arranged that the court pass upon the entire question and take an appeal, which was done, and no actual trial having taken place, the case was submitted to the court upon affidavits. The case has been heard here upon this appeal.

The bridge across the river at Cherry street rests at the westerly end of it upon parts of two lots, which lots extended from Water street to the river, and being about 100 feet in width, the bridge being at that point about twenty feet above Water street. In order to support the bridge two abutments have been erected, one situated near the line of Water street on the southerly side, and the other within the water line of the river or a little within the river, extending nearly across the lot, and there is at either end a small space of ground, or perhaps

five or six feet, which the abutments do not cover.    Cherry street, which originally came down by an incline to Water street, was filled in by the city to the same height as the bridge (about twenty feet) and an abutment, built on the northerly side of Water street and within Cherry street, was built in to the proper height and full width.    The approach was built over this piece of ground; completely covers it and covers to a large extent this property.    The city, conceiving that some revenue might be derived from a lease of this property, had advertised to lease this portion of the lot (it really being a portion of the bridge) and bids were made.    After the first bid was made and after the time had elapsed it is claimed that the Ricard Boiler & Engine Company offered another bid.    Thereupon the city rejected all bids and advertised again, and other parties bid, and after the time had elapsed for the filing of bids, and perhaps after some bids had been opened, the Ricard Boiler & Engine Company made another bid, but the city refused to accept or recognize their bid, and awarded the lease to another party, and it is the execution of this lease that the plaintiff seeks to enjoin.

It seems, in the history of this bridge, that some time in 1870, or perhaps a little earlier, a private company had built this bridge across the Maumee river and had purchased the land in question for the approach to the bridge and sustaining the northerly end of it.    That bridge was a toll bridge and was run by a private company who owned it.    Subsequently, it is said an act was passed by the Legislature authorizing the city to buy this bridge, and it was in fact purchased by the city of the company and it was, by proper deeds, duly executed by the corporation, deeded to the city to be an open, public bridge.    It was opened and used in that way for some little time—perhaps three or four years, if not more—when, in the year 1882 or 1883, the bridge was carried away and swept out by the flood, and thereupon the present structure was erected in the manner and form in which I have stated.

Now it is claimed that this piece of land is to be considered a street; that persons have been in the habit of going from Water street across the lot, adjoining to the Ricard property, or, be-

ginning at the other end, if you choose, to the docks and boat landings, or to the boats that might be moored at the foot of the street. It will be observed that there is no dock there of the city because the abutment fills up a large amount of the space, and there is no dock at either end of it; any docks which are there are private docks upon land next to this property. The testimony shows that the Ricard company had driven in there under the bridge with coal and had erected coal bins there and were in the habit of taking in perhaps a carload of coal and storing it there for the use of the manufacturing establishment of the plaintiff, that being built upon the property adjoining the property in controversy, the southerly side of their buildings being upon the line, or nearly upon the line of the two properties. The plaintiff company has a door upon the southerly side, which opens out upon this lot under the bridge, and they have been in the habit of storing boilers and other things there (their business being boiler making), and it is said that they have in some instances repaired boilers, and there are water-closets there used by the employes of that company, which are situated on these lots and upon the water's edge. It is said that they have been putting in from time to time earth and filled in there and the lot has been filled in so that they can use it, and plaintiff claims that they have expended perhaps several hundred dollars upon that.

Another claim of the plaintiff is, that by reason of this use of this part of this lot and by reason of the situation of the adjoining property this is in fact a public street and that they have a right to use it as a public street. My colleagues visited the property and viewed it and evidence has been taken here as to the situation of the property, and it seems to us very clear that in no sense can this be said to be a public street. The simple use of this property and the only use of it, so far as the property is concerned, is that it is used for the purpose of sustaining and supporting the abutments of the bridge and supporting the bridge itself; all the public highway there is is along the bridge over the property, and the city has never in any manner invited the public to use this property as a public highway and there is nothing that could be reached by the public in passing

from Water street down to the water except as they passed along the side and stepped out onto the adjoining property. We do not think the city has assumed any responsibility in regard to the duty of keeping it open or in repair underneath this bridge so that people could pass along there, and we do not think the city would be liable if a person should be injured under this bridge or stumble upon these various articles that have been stored there by the Ricard company. The city has never recognized it as a street, and, in our judgment, the very use to which it is put forbids the assumption that it is a street, or the finding or holding that it is a public street. We think very clearly that the city has a right, if it chooses, to lease this property for purposes not inconsistent with the use of the property for the support, upholding and maintaining of the bridge, and we presume that in any lease that is made upon it and executed, that any rights would be reserved to the city to enter upon the property for the purpose of maintaining, repairing or extending the bridge, and even if provision of that kind was not made, it would be very clear to us that no rights would be conveyed to the lessee against the city itself which would prevent it from using the property for the purposes for which it was purchased, and the lease must be made to the lessee subject to the rights of the city, but they could use it for storage purposes or purposes of that nature, if the city sees fit to do so, and we see no reason why it should not do so. Indeed, the statute seems to give to the city the right to lease real estate and it seems to us that this kind of real estate may be properly leased for this purpose.

With this view of the case, the plaintiff's petition will be dismissed and the injunction will be refused.

*C. F. Watls* and *Southard & Southard,* for plaintiff.

*M. R. Brailey* and *Chas. K. Friedman,* for defendant.